IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DARWIN ARMANDO CUJI VIMOS**, | **CIVIL ACTION** |
| Petitioner, | |
| v. | **NO. 26-780-KSM** |
| **FEDERAL DETENTION CENTER PHILADELPHIA, et al.,** | |
| Respondents. | |

MEMORANDUM

**February 11, 2026**                                                                                                    **Marston, J.**

This case is the most recent in a string of immigration cases challenging the Government's detention of a noncitizen without a bond hearing.  Petitioner, Darwin Armando Cuji Vimos ("Vimos") a citizen of Ecuador, entered the United States without inspection in approximately August 2021.  (Doc. No. 1)  After entering the United States, Vimos was apprehended by U.S. Immigration and Customs Enforcement ("ICE") in San Antonio on August 18, 2021.  (Doc. No. 1-6 at 2.)  He was released contingent on enrollment and successful participation in ICE's Alternatives to Detention (ATD) program.[1]  (*Id.* at 3.)  He was also ordered by ICE to present regularly for check ins.  (Doc. No. 1 at 1.)  Vimos has appeared at every check-in and complied with all ICE reporting requirements, such that ICE determined he no longer needed to report in person two years ago.  (*Id*. at 2.)

---

[1] As part of the ATD program, Vimos was subject to electronic monitoring and potentially a curfew.  (*See* Doc. No. 1-6 at 3.)

Since entering the United States, Vimos has settled in Bensalem, Pennsylvania with his wife and stepson. He has also held steady employment over the last four years and regularly attends mass at his family's local parish. (*Id.* at 3.) Vimos has never been served with a Notice to Appear with the Executive Office for Immigration Review ("EOIR"). And, as of February 6, 2026, no removal proceedings have been initiated by the Department of Homeland Security ("DHS") against Vimos. (*Id.*)

But, on approximately February 6, 2026[2], Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") pursuant to the June 8, 2025 Department of Homeland Security ("DHS") policy instructing all ICE employees to consider anyone inadmissible under § 1182(a)(6)(A)(i) subject to detention without eligibility for bond, regardless of whether they are attempting to enter the country or have been present here for years. (*See* Doc. No. 6 at 1.) Petitioner is currently detained at the FDC, Pennsylvania. (Doc. No. 1 at 2.)

On February 7, 2026, Petitioner filed the instant Petition, in which he argues that habeas relief is warranted because his continued detention is in violation of the Immigration and Nationality Act ("INA"), the bond regulations promulgated pursuant to the INA, the Administrative Procedure Act ("APA"), and the Due Process Clause of the Fifth Amendment. (Doc. No. 1 at 25–31.) The Government[3] opposes[4] the Petition, arguing that the Court should

---

[2] Petitioner's petition does not include a precise date, location, and/or time that he was arrested by ICE officials. (Doc. No. 1.) However, counsel for Petitioner certified that the ICE Detainee Locator verified Vimos's status as "In ICE Custody" at the Philadelphia Federal Detention Center ("FDC"), as of February 6, 2026 at 11:41 a.m. (*See* Doc. No. 1 at 33; *see also* Doc. No. 1-3 at 1.)

[3] Petitioner names five government officials as respondents: (1) Warden of the FDC; (2) Michael T. Rose, Acting Field Office Director of Enforcement and Removal Operations for ICE's Philadelphia Field Office; (3) Todd M. Lyons, Acting Director of ICE; (4) Kristi Noem, Secretary of DHS; and (5) Pamela Bondi, United States Attorney General (collectively, the "Government"). (Doc. No. 1 at 5–6.)

[4] In lieu of a comprehensive response to the Petition, the Government has filed a letter brief "conced[ing] that this matter . . . is legally and factually similar to recent [Section 2241] cases decided by this Court [and] incorporat[ing] the arguments made in those cases into [its] letter brief to preserve them for appeal." (Doc. No. 6 at 2.) As such, this Memorandum describes and discusses the Government's

deny habeas relief because: (1) the Court lacks jurisdiction to intervene in Petitioner's removal proceedings; (2) Petitioner has not exhausted administrative remedies; (3) Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2); and (4) his detention does not offend due process. (*See* Doc. No. 6.)  For the reasons discussed below, these arguments fail.[5]  And this Court joins the hundreds of other Courts in this country (*see id.*) that have found DHS's mandatory detention policy is unlawful in the context presented here.

I.   **JURISDICTION**

To begin, the Court finds that the Court has jurisdiction to consider the merits of the Petition.  As relevant here, 28 U.S.C. § 2241 authorizes federal district courts to grant writs of habeas corpus.  *See* 28 U.S.C. § 2241(c).  And although the INA limits the Court's jurisdiction over certain immigration matters, none of the provisions identified by the Government—8 U.S.C. § 1252(a), (b)(9), and (g)—strip the Court of jurisdiction in this case.  (*See* Doc. No. 6.)

First, § 1252(a)[6] does not strip the Court of jurisdiction because Petitioner is not challenging a *discretionary* decision.  *See, e.g.*, *Kashranov v. Jamison*, No. 25-cv-5555, 2025 WL 3188399, at *4 (E.D. Pa. Nov. 14, 2025) ("The petition does not challenge a discretionary choice to detain Mr. Kashranov.  Instead, there's a pure legal question about which section governs.  If it's 1225(b), then detention is mandatory.  No discretion.  If it's 1226, then due

---

arguments that have been put forth in four recent cases before this Court.  *See Rodrigues Pereira v. O'Neill*, No. 25-cv-6543, 2025 WL 3516665 (E.D. Pa. Dec. 8, 2025); *Gramajo De Leon v. Jamison*, No. 25-cv-7199, 2025 WL 3724604 (E.D. Pa. Dec. 23, 2025); *Hussain v. O'Neill*, No. 26-cv-35, 2026 WL 66891 (E.D. Pa. Jan. 8, 2026); *Kourouma v. Jamison*, 26-cv-182, 2026 WL 120208 (E.D. Pa.).

[5] The Government concedes that the Court can decide the issues raised in the Petition on the papers and without a hearing.  (*See* Doc. No. 6.)

[6] Section 1252(a)(2)(B)(ii) states that "[n]otwithstanding any other provision of law . . . , including section 2241 of Title 28, or any other habeas corpus provision . . . , no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . ." 8 U.S.C. § 1252(a)(2)(B)(ii).

process protections apply, and a bond hearing is mandatory. No discretion. Either way, the dispute is about the scope of the Government's statutory detention authority, which, as the Supreme Court has made clear, is 'not a matter of discretion.'" (citing *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001))); *Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *1 (E.D. Pa. Nov. 13, 2025) ("Finally, 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar jurisdiction because Petitioner is not challenging a discretionary decision to deny him bond, but is instead challenging the Government's position, as a matter of statutory interpretation, that no bond hearing is required.").

Second, § 1252(b)(9)[7] does not strip the Court of jurisdiction because the question before the Court—whether a bond hearing is required prior to detention—is "collateral to the removal process." *Cantu-Cortes*, 2025 WL 3171639, at *1; *see also, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018) (Alito, J.) (reasoning that because the class was not challenging "an order of removal," a "decision to detain [the noncitizen] in the first place or to seek removal," or "the process by which [a noncitizen's] removability will be determined," § 1252(b)(9) did "not present a jurisdictional bar" to the Court's consideration of whether §§1225 and 1226 require detention without a bond hearing"); *E.O.H.C. v. Secretary, U.S. Department of Homeland Security*, 950 F.3d 177, 185–86 (3d Cir. 2020) (citing the plurality's discussion in *Jennings* with approval and "distill[ing]" that discussion to "a simple principle"—§ 1252(b)(9) does "not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of

---

[7] Section 1252(b)(9) provides that "no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision" to review "questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States," unless review is sought of a final order. 8 U.S.C. § 1252(b)(9).

4

a final order of removal"); *Khalil v. President, United States*, 164 F.4th 259, 278 (3d Cir. 2026) (explaining that the plurality's "reading defines the proper scope of § 1252(b)(9)").

The Third Circuit's opinion in *Khalil*, also does not change the Court's conclusion. In *Khalil*, the petitioner was a lawful permanent resident in the United States, and a vocal advocate of Palestinian human rights. *Khalil*, 164 F.4th at 266. The Secretary of State determined that he was removable under an INA provision that allowed removal of a non-citizen whose "presence or activities in the United States . . . would have potentially serious adverse foreign policy consequences." *Id.* The petitioner was arrested and later served with a notice to appear which charged him as removable under the foreign-policy provision and on the alternate ground that he "procured" his status as a lawful permanent resident "by fraud or by willfully misrepresenting a material fact." *Id.* at 267. The petitioner sought habeas relief in federal district court. *Id.* He challenged the government's actions as the product of an unlawful policy of targeting immigrants for pro-Palestinian speech, challenged the foreign policy provision as unconstitutionally vague, claimed the fraud charge against him was retaliatory, and claimed his detention was impermissibly punitive. *Id.* The district court agreed and granted the Petition. The Third Circuit vacated that ruling, holding that § 1252(b)(9) stripped the court of subject matter jurisdiction. *Id.* at 273. The court distinguished its prior opinion in *E.O.H.C.*, finding that the petitioner's challenge to his ongoing detention was not "wholly collateral to the removal process," but instead "inextricably linked to it" and therefore, capable of consideration on a petition for review ("PFR") of a final order of removal. *Id.* at 274 (quotation marks omitted); *id.* at 276 (finding that "addressing any of [the petitioner's] claims would require deciding whether removing Khalil would be unlawful—the very issue decided through the PFR process").

Unlike the challenge to detention in *Khalil*, Petitioner's challenge here is not "inextricably linked" to his potential removal proceedings. Petitioner does not argue that his confinement is unlawful because the government's removal action is itself invalid. *Cf. id.* at 276 ("Though Khalil also challenges his detention, his arguments against it are identical to his arguments against removal."). Nor does Petitioner challenge the Government's broader authority to detain him pending a final decision on removal. Instead, he challenges the Government's authority to detain him *without a bond hearing*. This question is not "the very issue decided through the PFR process," nor is it capable of review once the immigration courts issue a final order on removal. *See id.* at 279 (distinguishing two cases that "challenged only the length of confinement without a bond hearing, a claim that does not get channeled into the PFR review process"); *cf. id.* at 276 ("Because the arguments Khalil has offered to challenge the detention necessarily challenge the government's decision to commence removal proceedings, the PFR court will be able to review those legal questions once the Board enters a final order of removal." (quotation marks omitted)).

Third, § 1252(g)[8] does not strip the Court of jurisdiction because Petitioner is not challenging the Government's authority to *commence* or *adjudicate* potential removal proceedings against him. *See Reno v. Am.-Arab Anti-Discrimination Committee ("AADC")*, 525 U.S. 471, 482 (1999) (narrowly reading § 1252(g) and finding it "applies only to the three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders'" and not to the "many other decisions

---

[8] Section 1252(g) states that "notwithstanding any other provision of law . . . . , including section 2241 of Title 28, or any other habeas corpus provision . . . , no court shall have jurisdiction to hear any clause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

or actions that may be part of the deportation process"); *see also, e.g.*, *Demirel*, 2025 WL 3218243, at *3 ("Demirel seeks a bond hearing; he does not challenge the commencement, adjudication, or execution of his removal (which may not even occur). The Government's contention that his claims 'arise from' the commencement of removal proceedings is thus incorrect." (internal citations omitted)); *Kashranov*, 2025 WL 3188399, at *3 ("Mr. Kashranov does not challenge the commencement of removal proceedings, the Attorney General's decision to adjudicate his case, or the execution of a removal order. Instead, he contests the Government's legal authority to detain him under Section 1225(b)(2). Section 1252(g) does not apply to such a claim and therefore does not strip the Court of jurisdiction to hear this case."); *Cantu-Cortes*, 2025 WL 3171639, at *1 ("First, 8 U.S.C. § 1252(b)(9) does not bar this Court from reviewing whether a bond hearing is required prior to detention because that issue is collateral to the removal process. . . . 8 U.S.C. § 1252(g) also does not bar jurisdiction for similar reasons.").

In sum, the Court rejects the Government's arguments that the Court lacks jurisdiction to consider the Petition.

## II. EXHAUSTION

Next, the Court finds that Petitioner is not required to exhaust his administration remedies by first seeking a bond hearing before an immigration judge, because exhaustion would be futile. *See Lyons v. U.S. Marshals*, 840 F.3d 202, 205 (3d Cir. 1988). On September 5, 2025, the Board of Immigration Appeals ("BIA"), the appellate body of the immigration courts, issued a precedential decision adopting a broad reading of 8 U.S.C. § 1225(b)(2) and holding that an immigration judge has no authority to consider a bond request from any individual who entered the United States without admission. *See In re Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025). Because immigration judges are bound by the BIA's holding in *Yajure Hurtado*—and therefore,

*must* deny requests for bond hearings from detainees like Petitioner—it would be futile for Petitioner to request a bond hearing before an immigration judge and appeal the inevitable denial to the BIA before seeking review in federal court. Accordingly, this Court joins the overwhelming number of courts who have waived the exhaustion requirement in identical circumstances. *See, e.g.*, *Demirel*, 2025 WL 3218243, at *4; *Kashranov*, 2025 WL 3188399, at *4; *Cantu-Cortes*, 2025 WL 3171639, at *1.

### III.     MERITS

That brings us to the merits of Vimos's Petition. The Court finds that Petitioner is detained pursuant to 8 U.S.C. § 1226(a),[9] not § 1225(b)(2),[10] and therefore, the Government's refusal to provide a bond hearing violates the INA and due process.[11]

---

[9] Section 1226 authorizes the detention of noncitizens "pending a decision on whether the alien is to be removed from the United States." *Id.* § 1226(a). But unlike a noncitizen detained under § 1225, a noncitizen detained under § 1226 may be released while they await a decision on removal. *Id.* (granting the Attorney General discretion to either detain the noncitizen *or* to release the noncitizen on bond or conditional parole). Immigration authorities are tasked with the "initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). "At the hearing, the noncitizen 'may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community.'" *Id.* (quoting *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019)). If released, the bond remains subject to revocation. *See* 8 U.S.C. § 1226(b) (providing that the Attorney General may "at any time revoke" the noncitizen's "bond or parole . . . , rearrest the alien under the original warrant, and detain" them).

[10] Section 1225 governs the inspection of "applicants for admission," a phrase broadly defined as any noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." *See* 8 U.S.C. § 1225(a)(1), (b)(1), (b)(2). Section 1225(b) divides applicants into two categories. *Id.* § 1225(b). First, § 1225(b)(1) provides for the inspection of aliens "arriving in the United States and certain other aliens who have not been admitted or paroled." *Id.* § 1225(b)(1). And § 1225(b)(2) governs the "[i]nspection of other aliens," stating that "[i]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" pending a removal proceeding. *Id.* § 1225(b)(2)(A).

[11] Because the Court agrees that Vimos's detention violates the INA and his rights under the Due Process Clause of the Fifth Amendment, the Court need not consider whether it also violates the INA's implementing regulations.

8

When an applicant for admission is apprehended after being present in the United States for several years, like Petitioner here, they are not "actively 'seeking admission'" at the time of their arrest, so § 1225(b)(2) does not govern their detention. *Demirel*, 2025 WL 3218243, at *4; *see also, e.g.*, *Kashranov*, 2025 WL 3188399, at *6 (considering structure of § 1225(b)(2) and the definition of "seeking" and concluding that "'seeking admission' describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization"); *Cantu-Cortes*, 2025 WL 3171639, at *2 ("A noncitizen like petitioner, who has already entered and is present in the country, simply cannot be characterized as seeking entry consistent with the ordinary meaning of that phrase." (quotation marks and citations omitted)). Instead, their detention is governed by § 1226, which "grants the Attorney General discretion to detain or release a noncitizen on bond while removal proceedings are pending." *Kashranov*, 2025 WL 3188399, at *5. Courts have held that the right to a bond hearing is not merely statutory, but constitutional. *Id.* ("When the Government detains an alien under Section 1226, the alien has due process rights, including a right to an individualized detention and a bond hearing."); *see also, e.g.*, *Ndiaye v. Jamison*, No. 25-cv-6007, 2025 WL 3229307, at *1 (E.D. Pa. Nov. 19, 2025) ("[D]ue process and proper statutory interpretation of the INA preclude Ndiaye from being mandatorily detained without bond under § 1225(b)(2) . . . ."); *Cantu-Cortes*, 2025 WL 3171639, at *2 ("ICE's mandatory detention of Petitioner under 8 U.S.C. § 1225(b)(2)(A) violates the laws of the United States and Petitioner's rights under the Due Process Clause.").[12]

---

[12] The Fifth Circuit's recent opinion in *Buenrostro-Mendez v. Bondi*, does not change the Court's interpretation of the relevant statutory language. No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026). As a preliminary matter, decisions of the Fifth Circuit are not binding on this Court, and are, at most, persuasive authority. *See United States v. Maury*, 695 F.3d 227, 259 n.27 (3d Cir. 2012) ("Of course, the decisions of other circuits, while persuasive, are not binding on the district courts in this Circuit."). And here, the Court is not persuaded by the Fifth Circuit's reasoning. In *Buenrostro-Mendez*, the Fifth Circuit

9

Because ICE's mandatory detention of Petitioner without a bond hearing violates the INA and the Due Process Clause of the Fifth Amendment, habeas relief is warranted. 28 U.S.C. § 2241(c)(1), (3); *see also, e.g.*, *Kashranov*, 2025 WL 3188399, at *8.

## IV. CONCLUSION

For the reasons discussed above, the Petition is granted. The Court will order the release of Petitioner because he was unlawfully detained. *See Kashranov*, 2025 WL 3188399, at *8; *Patel*, 2025 WL 3241212, at *3. The Government is permanently enjoined from re-detaining Petitioner under § 1225(b)(2)(A). The Government is also temporarily enjoined from re-arresting him under § 1226(a) for seven days following his release to ensure the habeas remedy

---

consolidated two habeas petitions that were factually and legally similar to the instant action. 2026 WL 323330, at *3. Both involved undocumented "applicants for admission," who were detained by DHS under 8 U.S.C. § 1225(b)(2) and who sought "release from detention or a bond hearing under 8 U.S.C. § 1226(a)." *Id.* at *3–4. In each, the district court found that because petitioners were "not actively involved in any admission proceedings" at the time they were detained, they were not "seeking admission" under Section 1225(b)(2). *Id.* at *3. The Fifth Circuit disagreed, finding in relevant part that "there is no material disjunction—by the terms of the statute or the English language—between the concept of applying for something and seeking something," so "being an 'applicant for admission' is not a condition independent from 'seeking admission.'" *Id.* at *3–4. The Fifth Circuit acknowledged that such a reading "creates a[] redundancy between these terms," but waves away any concern because the "Supreme Court has observed that redundancies are common in statutory drafting." *Id.* at *5 (citation omitted). Then, after also analyzing concerns beyond the statutory language (*id.* at *7–8), the court found that all applicants for admission are, at all times, seeking admission, and thus subject to mandatory detention under Section 1225(b)(2). *Id.* at *10.

This Court is unpersuaded by the Fifth Circuit's textual analysis for many of the same reasons discussed in the dissent in *Buenrostro-Mendez* and the majority of prior opinions by courts in the Third Circuit. *See e.g.*, *id.* at *10–18 (Douglas, J., dissenting); *Mirdjalilov v. Warden of FDC*, No. 25-cv-7068, 2026 WL 184249, at *6 n.6 (E.D. Pa. Jan. 23, 2026) (collecting over seventy cases finding the same). As the *Buenrostro-Mendez* dissent discusses, "[t]he ordinary meaning of 'seek' requires some present, active action on the seeker's part." *Buenrostro-Mendez*, 2026 WL 323330, at *12. And to read Section 1225 to treat "the phrases [applicant for admission and seeking admission] as identical would render one entirely meaningless." *Kashranov*, 2025 WL 3188399, at *7. Without binding precedent to the contrary, this Court is "not prepared to read [one] part of § 1225(b) out of existence." *Demirel*, 2025 WL 3218243, at *4. Instead, the Court reaffirms its prior holdings that Section 1226 governs the detention of undocumented immigrants who are present in the United States and not ***actively*** seeking admission. *See, e.g.*, *Rodrigues Pereira*, 2025 WL 3516665, at *8. And as the Court finds the statutory language is clear, it is unnecessary to go beyond it to consider the Fifth Circuit's extratextual analysis. *See Bostock v. Clayton County*, 590 U.S. 644, 653 (2020) ("When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest.").

10

is effective. If, after seven days, the Government detains Petitioner under § 1226(a), the Government must provide him with notice and an opportunity to be heard at a bond hearing before an immigration judge, who will assess whether he poses a flight risk or a danger to the community. An appropriate order follows.